UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES RICKY BLADE,    Plaintiff,

v.    Civil Action No. 3:14-cv-396-DJH

TJX COMPANIES, INC.,    Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

    Plaintiff James Blade sued his employer, Defendant TJX Companies, Inc., for racial discrimination under the Kentucky Civil Rights Act after TJX transferred him from one of the company's stores to another. (Docket No. 1-3) But when Blade was transferred, he kept the same position, salary, and benefits. The Court finds that a simple transfer, without more, does not qualify as an adverse employment decision, a necessary element of a racial discrimination claim. TJX's motion for summary judgment will therefore be granted.

    **I.    BACKGROUND**

    TJX Companies, Inc., a retail store operator, hired James Blade in February 1996. (D.N. 1-3, PageID # 11; D.N. 61-1, PageID # 444) About ten years later, TJX promoted Blade to Store Manager at TJX's Elizabethtown, Kentucky store. (D.N. 61-1, PageID # 444) In December 2012, TJX transferred Blade to its Westport store in Louisville, Kentucky. (D.N. 61-1, PageID # 446) A few months later, Blade began to report to John Joyce when Joyce became the area's District Manager in TJX's Stores Operations Division. (D.N. 61-3, PageID # 502)

    Between May and August 2013, Joyce visited the Westport store several times to evaluate the store's performance and the performance of the management team. (D.N. 61-1, PageID # 472; D.N. 61-3, PageID # 502) During Joyce's visits, he noted several problems with

the store and spoke with Blade about the performance of two assistant managers. (D.N. 61-2, PageID # 488-89) One of those assistant managers, Stacey Anderson, was performing poorly, and the District Office had received numerous complaints about her. (D.N. 61-1, PageID # 450, 472-73; D.N. 61-2, PageID # 487) Joyce told Blade to start a review process with Anderson, which Blade claims to have done, but did not document. (D.N. 61-1, PageID # 462-63) Ultimately, Joyce told Blade that his management team was broken. (D.N. 61-1, PageID # 462)

There were other issues with the Westport store. It had the highest "shrink" in the district. (*Id.*) Shrink "is the difference between the physical inventory in the store and inventory it has on the books." (D.N. 60, PageID # 409) The store was also receiving low "Team of the Quarter" scores. (D.N. 61-2, PageID # 490)

On August 14, 2013, Blade went on medical leave. (D.N. 61-1, PageID # 446) The following day, Joyce conducted a "RAP Session," which is a town hall meeting between the store's employees and Joyce, but without the managers. (*Id.*, PageID # 459) At that meeting, many associates expressed displeasure with the store's state. (*Id.*) The employees rated overall morale a three out of ten. (D.N. 61-3, PageID # 504)

After speaking with the regional vice president, David Wiese, Joyce decided to make a change at the top. (*Id.*) When Blade returned on October 28, 2015, Joyce transferred him from the Westport store to the Southland Terrace store. (D.N. 61-2, PageID # 497) Joyce replaced Blade, an African American male, with Jennifer Harris, a Caucasian woman, as manager of the Westport store. (*Id.*, PageID # 495) At Southland Terrace, Blade had the same job title, had the same job description, was paid the same salary, and had the same benefits. (D.N. 61-1, PageID # 464-66) Blade, however, believed that the transfer was a demotion because the Southland Terrace store's sale volume was $8 million less than that of the Westport store and was located

2

in what "could be considered a very bad area," though Blade did not believe this himself. (*Id.*, PageID # 465)

Three weeks after Blade was transferred, Wiese informed Joyce via email that the Southland Terrace store would be closing. (D.N. 61-2, PageID # 484; D.N. 61-3, PageID # 542) Both Joyce and Wiese claim, and present emails as evidence, that they did not know of the store closing until after they transferred Blade. (D.N. 61-3, PageID # 505, 557; D.N. 61-4, PageID # 557) Blade claims that Joyce and Wiese must have known about the closing. (D.N. 65, PageID # 613) He relies on an email sent from Sandi Hale, a TJX employee in Store Operations, to Celine Lewis, Wiese's supervisor, on October 28, 2013 that mentions the closing. (*Id.*; D.N. 61-3, PageID # 542-43)

Before being told about the closing by TJX management, Blade heard about it on two occasions. (D.N. 61-1, PageID # 450) First, he heard about the store's closing when another store manager told Blade that lighting contractors came to the store and hinted at the Southland Terrace store's closing. (*Id.*) he also heard about the store's closing when Blade's assistant manager told him that a property manager came by to take pictures of the store because the Southland Terrace lease was probably not going to be renewed. (*Id.*)

In any event, Joyce told Blade about the closing on December 2, 2013. (D.N. 61-1, PageID # 466) Joyce tried to find him another manager's position immediately, but none were available. (*Id.*, PageID # 476) Joyce and Wiese then created an assistant manager position, which they intended to be temporary, at another store in Louisville. (D.N. 61-2, PageID # 494) Blade accepted this position, along with a slight pay reduction. (D.N. 61-3, PageID # 506, D.N. 61-1, PageID # 468) Seven weeks later, Joyce offered Blade the Store Manager position at TJX's Elizabethtown store; Blade accepted. (D.N. 61-1, PageID # 466) With the new

assignment, Blade again received the same pay and benefits, and had the same responsibilities as he did at the Westport and Southland Terrace stores. (*Id.*, PageID # 469; D.N. 61-3, PageID # 507)

Blade sued TJX, claiming that his transfer to TJX's Southland Terrace store constituted racial discrimination in violation of the Kentucky Civil Rights Act (KCRA). (D.N. 1-3, PageID # 11-12) TJX removed the suit under 28 U.S.C. §§ 1332 and 1441. (D.N. 1) About a year later, Blade moved to amend his complaint. (D.N. 35) This request was denied. (D.N. 48) A few months later, TJX moved for summary judgment. (D.N. 59) In response, Blade attempts to add another KCRA racial discrimination claim based on his transfer from the Southland Terrace store. The Court will deny this new claim because a plaintiff cannot assert a new claim in response to a summary judgment motion. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). And because Blade cannot establish that TJX subjected him to an adverse employment decision when it transferred him to the Southland Terrace store, the Court will grant summary judgment in favor of TJX.

## II.   STANDARD

The Court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party, TJX, must identify the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If TJX satisfies this burden, the non-moving party, Blade, must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Though the Court must view the evidence in a light most favorable to the non-moving party, Blade must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Moreover, Blade must establish a genuine issue of material fact with respect to each element of his claim. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of his position will be insufficient; instead, Blade must present evidence upon which the jury could reasonably find for him. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252).

### III.   DISCUSSION

Blade lacks direct evidence to support his KCRA racial discrimination claim and instead attempts to prove his claim of disparate treatment using circumstantial evidence. (*See* D.N. 65, PageID # 622) Therefore, the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), governs. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *see also Perry v. AutoZoners, LLC*, 948 F. Supp. 2d 778, 786 (W.D. Ky. 2013) ("Kentucky courts look to federal law in interpreting the [KCRA]."); *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992). To establish a prima facie case under this framework, Blade must show that "(1) [he] is a member of a protected group, (2) [he] was subject to an adverse employment decision, (3) [he] was qualified for the position, and (4) [he] was replaced by a person outside of the protected class." *Russell*, 537 F.3d at 604.

5

There is no dispute that Blade satisfies the first and fourth prongs. (*See* D.N. 60, PageID # 423) But TJX contends that Blade was not subject to an adverse employment decision, nor was he qualified for the Store Manager position at the Westport store. (*Id.*) Irrespective of Blade's qualifications, the Court agrees that Blade's transfer does not qualify as an adverse employment decision.

The Sixth Circuit has held that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (citation omitted); *see Keeton v. Flying J, Inc.*, 429 F.3d 259, 264 (6th Cir. 2005). Still, the Court can find that an adverse employment decision occurred where "the employee 'received a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *Kocsis*, 97 F.3d at 886). A change in location can also be a factor, but it has been found that an added twenty minutes to an employee's commute does not qualify. *Keeton*, 429 F.3d at 265 (citing *Darnell v. Campbell Cty. Fiscal Court*, 731 F. Supp. 1309 (E.D. Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir. 1991). And, importantly, "[a]n employee's subjective impressions as to the desirability of one position over another are not relevant." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

Under these standards, Blade's transfer did not constitute an adverse employment decision. He kept the same title, salary, and benefits; his responsibilities remained the same; and the distance between the Westport and Southland Terrace stores is minimal. (D.N. 61-1, PageID # 464-66) Blade presents no evidence to meet any of the factors identified by the Sixth Circuit. Instead, he contends that the transfer entailed a loss of prestige; he also complains that Joyce and

6

Wiese knew the Southland Terrace store was going to close before they sent him there. Thus, he argues that there are genuine issues of material fact as to whether TJX subjected him to an adverse employment decision by transferring him.

Blade's argument that the transfer was an adverse employment action because it involved a loss of prestige is unpersuasive. The only evidence Blade presents to support this argument are his subjective impressions, which are not relevant, *see Policastro*, 297 F.3d at 539, and the difference in revenue between the two stores. (*Id.*, PageID # 465) This scintilla of evidence is insufficient. *See Hartsel*, 87 F.3d at 799. Blade offers no reason that disparity in revenue between two stores equates to prestige, nor does he cite any authority on the matter. Without more, Blade's contention regarding disparity in revenue between the Westport and Southland Terrace stores is insufficient to establish an adverse employment decision.

Blade's contention that Joyce and Wiese knew that the Southland Terrace store was going to close is also unpersuasive. (D.N. 65, PageID # 613-12) Blade's conversations with his colleagues about the Southland Terrace store's potential to close does little to establish that Joyce or Wiese knew about the stores closing (D.N. 61-1, PageID # 450), nor does the email from Sandi Hale to Celine Lewis because it was only between those two individuals. (*See* D.N. 61-3, PageID # 542-43) Lewis then sent a notice to Wiese about the closings on November 4, 2013, after Blade's transfer, and there is no indication in that email that Wiese had any prior knowledge of the store's closing. (*See* D.N. 61-3, PageID # 542) Wiese informed Joyce about the closing via email on November 18, 2013, and that email indicates that this was the first time Joyce heard about the closing. (*Id.*) Blade's contention that these emails prove that Joyce knew about the closing is nothing more than speculation. To "simply show that there is some metaphysical doubt as to the material facts" is insufficient to demonstrate a genuine issue of

7

material fact. *Matsushita*, 475 U.S. at 586. Thus, the Southland Terrace store's closing has no bearing on whether Blade's transfer was an adverse employment decision.

In sum, Blade has failed to establish a prima facie case for disparate treatment under the KCRA when TJX transferred him to Southland Terrace. He was not subject to an adverse employment decision, and there is no issue of material fact regarding an essential element of his claim. The Court will therefore grant summary judgment for TJX.

In addition to the Southland Terrace claim, Blade attempts to bring another KCRA racial discrimination claim based on his transfer from Southland Terrace to an assistant manager position at TJX's Taylorsville Road store. (D.N. 65, PageID # 632) (*Id.*) Blade's complaint, however, only alleges racial discrimination with regard to his transfer from TJX's Westport store to its Southland Terrace store.[1] A plaintiff cannot raise a new claim in response to a defendant's motion for summary judgment. *Tucker*, 407 F.3d at 788; *see Carter v. Ford Motor Co.*, 561 F.3d 562, 567-69 (6th Cir. 2009). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Tucker*, 407 F.3d at 788. Consequently, the Court declines to consider Blade's new claim.

---

[1] When Blade unsuccessfully attempted to amend his complaint in May 2015, he did not include this new claim. (*See* D.N. 35-3, PageID # 295)

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Defendant TJX's motion for summary judgment (D.N. 59) is **GRANTED**.

(2)  A separate judgment will issue this date.

March 30, 2016

**David J. Hale, Judge**
**United States District Court**